```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
                                                                 :
CARGILL FINANCIAL SERVICES                                       :
INTERNATIONAL, INC., et. al.,                                    :
                                                                 :
                              Plaintiffs,                        :        24-cv-5751 (LJL)
                                                                 :
                   -v-                                           :        OPINION AND ORDER
                                                                 :
TARAS BARSHCHOVSKIY,                                             :
                                                                 :
                              Defendant.                         :
-----------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 09/19/2024

LEWIS J. LIMAN, United States District Judge:

Defendant Taras Barshchovskiy ("Defendant") moves, pursuant to Federal Rule of Civil Procedure 12(b)(5), to dismiss this action for failure of service of process. Dkt. No. 5. Defendant also moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), to dismiss the complaint to the extent it alleges an in rem claim against him.

For the following reasons, the motion to dismiss is denied.

## BACKGROUND

This is an action under Article 53 of the New York Civil Practice Law and Rules ("CPLR") for recognition and enforcement of a final and conclusive foreign country money judgment. Dkt. No. 3-1 ¶ 1. Plaintiffs Cargill Financial Services International, Inc. and CFSIT, Inc. ("Plaintiffs") are judgment creditors of a judgment rendered in the High Court of Justice, Business and Property Courts of England & Wales, Commercial Court, (the "English Court") in the amount of $123,940,459.55, exclusive of interest accruing (the "Judgment"). *Id.* ¶¶ 1–2. Plaintiffs are Delaware corporations with principal places of business in Minnesota. *Id.* ¶¶ 15–16. Defendant is the judgment debtor. *Id.* ¶ 1. Defendant resides or has resided in Ukraine but has no current registered or known address in Ukraine or elsewhere. *Id.* ¶¶ 19–20.

The Judgment is based on an arbitration award (the "Award") issued on December 14, 2022, by the London Court of International Arbitration ("LCIA"), following arbitration proceedings between the parties pursuant to the English Arbitration Act 1996, the LCIA Rules, and common law. *Id.* ¶¶ 3–4. In the arbitration, Plaintiffs, who provide trade finance to companies and banks in the global commodities markets, successfully claimed that Defendant had failed to satisfy debts owed to them based on financing extended by Plaintiffs to a multinational conglomerate named T.B. Fruit Group ("T.B. Group") founded by Defendant. *Id.* ¶¶ 18–19, 52–53.

Plaintiffs filed the action on March 28, 2024 in New York State Court. Dkt. No. 3 ¶ 1. On June 20, 2024, Justice Arthur F. Engoron of the New York State Supreme Court signed an order granting Plaintiffs' motion for alternative service and an extension of time, permitting Plaintiffs to effect service upon Defendant by email and by Facebook posting, pursuant to CPLR § 308(5) (the "Order of Service"). Dkt. No. 3-2. On July 16, 2024, counsel for Plaintiffs filed an Affirmation of Service, attesting that Defendant had been served by email consistent with the Order of Service. Dkt. No. 3-3.

Defendant removed the case from New York State Supreme Court, New York County, on July 30, 2024, on the basis of diversity jurisdiction. Dkt. No. 3.

On August 5, 2024, Defendant filed this motion under Rules 12(b)(5) and 12(b)(6). Dkt. No. 5. Defendant also filed a memorandum of law and a declaration in support of the motion. Dkt. Nos. 6–7. On August 26, 2024, Plaintiffs filed a memorandum of law in opposition to the motion. Dkt. No. 11. Defendant filed a reply memorandum of law in further support of the motion on September 9, 2024. Dkt. No. 12.

## DISCUSSION

Defendant argues that service was ineffective as Defendants failed to comply with the requirements of CPLR § 308(5) for alternative service and thus Justice Engoron should not have signed the Order of Service. Dkt. No. 6 at 1, 5–11. He complains that Plaintiffs did not attempt to serve the summons and complaint on him before seeking alternative service. *Id.* at 1. He also argues that Plaintiffs have failed to plead an in rem claim against him. *Id.* at 11–14.

### I. Sufficiency of Service of Process

Defendant argues that service was insufficient and ineffective. Plaintiffs effected service by email and Facebook, as permitted by the Order of Service signed by Justice Engoron. Dkt. Nos. 3-3, 11-1, 11-2. Service by email was made both to Defendant himself and to eleven of his Ukrainian lawyers who had filed motions or attended hearings recently on his behalf. Dkt. No. 11 at 6, 10; Dkt. No. 3-3. Defendant argues, however, that Plaintiffs failed to satisfy the requirements of CPLR § 308(5) for alternative service because they made no attempts to serve the summons and complaint on Defendant before seeking alternative service, Dkt. No. 6 at 1, 5–6, 8, and did not adequately demonstrate that personal service of process was impracticable, *id*. at 9–10; Dkt. No. 12 at 1, 3–6.

A motion under Federal Rule of Civil Procedure 12(b)(5) challenges the sufficiency of service of process. "When a defendant moves to dismiss a complaint under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Esposito v. TipRanks, Ltd.*, 2024 WL 68528, at *2 (S.D.N.Y. Jan. 4, 2024) (quoting *Militinska-Lake v. Kirnon*, 2023 WL 7648511, at *1 (2d Cir. Nov. 15, 2023) (summary order)); *see* 4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1083 (4th ed. 2016) ("[T]he party on whose behalf service of process is made has the burden of establishing its validity.").

3

Federal Rule of Civil Procedure 4 specifies the methods by which the summons and complaint must be served when a case is commenced in federal court. When a case is commenced in state court, however, and only reaches federal court by way of removal, then "the federal district court must look to state law to determine whether service of process was valid." *USHA Holdings, LLC v. Franchise India Holdings Ltd.*, 11 F. Supp. 3d 244, 259 (E.D.N.Y. 2014); *see also Lombardi v. U.S. Postal Serv.*, 2016 WL 1365485, at *3 (W.D.N.Y. Apr. 6, 2016), *report and recommendation rejected on other grounds sub nom. Lombardi v. United States*, 2016 WL 1604492 (W.D.N.Y. Apr. 22, 2016).

Service upon natural persons in New York is governed by CPLR § 308. Under New York law, service of process on a natural person may be made by (1) personal service; or (2) delivery "to a person of suitable age and discretion at the actual place of business" or "dwelling place" of the person "to be served and mailing the summons to the last known residence or actual place of business of the person to be served." CPLR § 308(1)–(2). Where such service "cannot be made with due diligence," service may be made by "affixing the summons to the door of either the actual place of business [or] dwelling" of the person to be served and "mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business" under Section 308(4). When service under CPLR paragraphs (1), (2), and (4) is "impracticable," the court upon motion without notice, may direct service of process by alternative means, including email. CPLR § 308(5); *see Avail 1 LLC v. Kalsi*, 2023 WL 7297214, at *2 (S.D.N.Y. Nov. 6, 2023); *Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 365–66 (E.D.N.Y. 2016). In addition, because Defendant is alleged to be a national of Ukraine, which is a party to the 1965 Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or

4

Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (the "Hague Convention" or "Convention"), service of process must comply with the Hague Convention. *See Sunset Homeowners Ass'n, Inc. v. DiFrancesco*, 2019 WL 1597497, at *6 (W.D.N.Y. Apr. 15, 2019).

Plaintiffs have made an adequate showing of service of process.[1] Plaintiffs obtained an Order of Service from Justice Engoron, permitting alternative service through Facebook and email. They demonstrated to Justice Engoron that service under CPLR paragraphs (1), (2), and (4) was impracticable, that service under the Hague Convention was impracticable and futile, and that service by email and Facebook was reasonably calculated, under all of the circumstances, to apprise Defendant of the action. *See Mullane v. Cent. Hanover Bank & Tr.*

---

[1] Plaintiffs argue that service was sufficient because it complied with Justice Engeron's Order of Service, Dkt. No. 11 at 10, and the fact that service was proper is "law of the case"; they assert that if Defendant "sought to challenge the Order, he should have kept the case in the New York Supreme Court, where it could have been reviewed by the Justice who issued it and the court tasked with ruling on New York procedural law." *Id*. at 11, 15–16. But, once this case was removed, Justice Engeron's Order of Service became federalized. *See* 28 U.S.C. § 1450 ("All injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court."); *Sunset Homeowners*, 2019 WL 1597497, at *8 (state court's order is "federalized" when removed and thus the federal court is authorized to reconsider propriety of that order). Defendant was not required to challenge the Order of Service in state court at the cost of foregoing his statutory right to remove to this Court. And, Justice Engeron's ruling was not law of the case. Justice Engeron did not rule on a motion by Defendant seeking to challenge the sufficiency of alternative service and thus his order cannot be law of the case with respect to Defendant's motion here challenging the sufficiency of alternative process. Had this Court issued the Order of Service ex parte as Justice Engeron did, Defendant would have been free to challenge the sufficiency of alternative service through a motion under Rule 12(b)(5) without regard to principles of law of the case. *See, e.g.*, *Spin Master, Ltd. v. Aomore-US*, 2024 WL 3030405, at *4–5 (S.D.N.Y. June 17, 2024) (considering motion to dismiss case under Rule 12(b)(5) after having previously granted alternative service order); *Transclick, Inc. v. Rantnetwork, Inc.*, 2013 WL 4015768, at *3–4 (S.D.N.Y. Aug. 7, 2013) (same). The doctrine of law of the case has no greater application where, as here, the prior ex parte order was issued by a state court justice prior to removal. *Cf. Pinyuk v. CBE Group, Inc.*, 561 F. Supp. 3d 334, 338 (E.D.N.Y. 2021) (application of law of the case doctrine is discretionary and depends on the context in which the court made its first ruling); *see also Bricklayers and Allied Craftsmen, Loc. Union No. 44 v. Corbetta Const. Co., Inc.*, 511 F. Supp. 1386, 1390 (S.D.N.Y. 1981) (law of the case doctrine does not preclude reconsideration of state court decision particularly where one party did not participate in prior proceeding).

5

*Co.*, 339 U.S. 306 (1950).  Where a plaintiff demonstrates that email is likely to reach the defendant, courts have repeatedly held that service by email satisfies the requirements of due process.  *See Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *6 (S.D.N.Y. July 17, 2020).  In addition, courts have relied on Facebook service as a "backstop" for service by other means.  *See Doe v. Hyassat*, 337 F.R.D. 12, 15 (S.D.N.Y. 2020).  Plaintiffs demonstrated that service by email was reasonably designed to reach Defendant.  *See* Dkt. No. 7-14 ¶¶ 23–25, 28–32; Dkt No. 7-15 ¶¶ 25, 27; Dkt. No. 7-16 ¶¶ 55–56, 58–64.  There is no dispute that Defendant received actual notice of the lawsuit through these means.

Defendant first argues that alternative service on him was not permitted because Plaintiffs did not attempt to serve him personally with the summons and complaint before seeking alternative service.  Dkt. No. 6 at 1, 5–6.  "[A] party need not prove 'actual prior attempts to serve a party under the methods outlined' in Sections 308(1), (2), and (4)," to receive leave for alternative service.  *Avail 1 LLC*, 2023 WL 7297214, at *2 (quoting *Franklin v. Winard*, 592 N.Y.S.2d 726, 727 (1st Dep't 1993)); *see Kesten v. Broad. Music, Inc.*, 2021 WL 1740806, at *1 (S.D.N.Y. Mar. 3, 2021); *Tishman v. The Associated Press*, 2006 WL 288369, at *1 (S.D.N.Y. Feb. 6, 2006) (Lynch, J.); *Renren, Inc. v. XXX*, 127 N.Y.S.3d 702 (N.Y. Sup. Ct. 2020), *aff'd sub nom. Matter of Renren, Inc.*, 140 N.Y.S.3d 701 (1st Dep't 2021); *Fortunato v. Chase Bank USA, N.A.*, 2012 WL 2086950, at *1 (S.D.N.Y. June 7, 2012) ("'Section 308(5) . . . does not require proof of due diligence or of actual prior attempts to serve a party under the other provisions of the statute.'" (quoting *S.E.C. v. HGI, Inc.*, 1999 WL 1021087, at *1 (S.D.N.Y. Nov.8, 1999))).  Service thus was not insufficient for failure to have previously attempted personal service of the complaint.[2]

---

[2] Indeed, in his reply memorandum in further support of the motion to dismiss, Defendant

6

Defendant next argues that, even if Plaintiffs were not required to attempt other methods of service, their showing of impracticability to the state court was insufficient. Dkt. No. 6 at 9–10; Dkt. No. 12 at 1, 3–6. That argument also is without merit. "[T]he impracticability standard is not capable of easy definition." *Tishman*, 2006 WL 288369, at *1. "The meaning of 'impracticable' depends on the facts and circumstances of a particular case. [But] [i]n general, plaintiff must make some showing that the other prescribed methods of service could not be made." *D.R.I., Inc. v. Dennis*, 2004 WL 1237511, at *1 (S.D.N.Y. June 3, 2004) (internal citations and quotations omitted); *see also S.E.C v. Nnebe*, 2003 WL 402377, at *3 (S.D.N.Y. Feb. 21, 2003) ("[A] plaintiff seeking to effect alternative service 'must make some showing that the other prescribed methods of service could not be made.'" (quoting *Markoff v. S. Nassau Cmty. Hosp.*, 458 N.Y.S.2d 672, 672 (2d Dep't 1983))).

Plaintiffs made a showing of impracticability before Justice Engeron. Plaintiffs based their application, and Justice Engeron based the Order of Service, on the affirmations of Bradley S. Pensyl, and Brandon D. O'Neil, both dated June 25, 2024, and the affirmation of Dmytro Marchukov dated June 19, 2024. Dkt. No. 7-13.

Mr. Marchukov is Co-Head of Cross-Border Litigation and a Senior Partner at the Ukrainian law firm of Integrites. Dkt. No. 7-16 ¶ 1. He is also local Ukrainian counsel for the Plaintiffs. *Id.* ¶ 3. Plaintiffs brought an action on September 8, 2023, before the Kyiv Court of Appeals in Ukraine for recognition and enforcement of the Award (the "Ukrainian Proceedings"). *Id.* ¶ 3. Mr. Marchukov also monitored an action brought against Defendant in

---

retreats from the argument that alternative service was deficient for failure to attempt other means to serve the complaint and "agrees" that Plaintiffs were not required to show due diligence or to show that actual prior attempts to serve him under the other methods of the CPLR failed. Dkt. No. 12 at 3.

Lviv City in 2024 relating to an order against Defendant from Liechtenstein. *Id.* ¶ 5. He states that while the Unified State Register of Ukraine of Legal Entities, Individual Entrepreneurs and Public Organizations (the "Unified Register") had listed an address for Defendant as an individual at Kniazia Sviatoslava Square in Lviv (the "Kniazia Address"), Defendant deregistered from the Unified Register on April 8, 2024 which resulted in the removal of his address therefrom and that Defendant still does not have a registered address. *Id.* ¶¶ 7(a), (b), & (d), 8. At a court hearing in Ukraine held on March 11, 2024, the judge in the Ukrainian Proceedings stated that it had made two attempts to establish Defendant's place of residence, neither of which was successful. *Id.* ¶ 10. Mr. Marchukov further affirms that, although Defendant resides in Ukraine, he has had no known address since April 8, 2024. *Id.* ¶ 7. On May 30, 2024, Defendant executed a formal declaration, in which he confirmed that he had no declared or registered place of residence or whereabouts, that he does not own (alone or jointly) any real estate that may qualify as a place of residence, that he does not rent any real estate that may qualify as a place of residence, that he does not own (alone or jointly) any mortgaged real estate, and that he has no place of employment. *Id.* ¶ 7(e). Mr. Marchukov also notes that while Defendant's tax returns refer to an address at Bratkovychy village, Lviv Region, in Ukraine (the "Bratkovychy Location"), it does not include a street name or house number. *Id.* ¶ 7(f). Mr. Marchukov further affirms that service through the Hague Convention would be futile because Defendant has no known address in Ukraine or elsewhere. *Id.* ¶¶ 12-15, 22. He also details the extensive efforts Defendant engaged in to obstruct Plaintiffs' efforts to serve him by mail. *Id.* ¶¶ 27–53.

Mr. O'Neil is a partner at Allen Overy Shearman Sterling LLP, counsel for Plaintiffs. Dkt. No. 7-15 ¶ 1. Mr. O'Neil relays facts regarding the proceedings in the English Court which

8

issued the foreign Judgment of approximately $124 million which Plaintiffs seek to have recognized and enforced here.  He informs that the English court authorized service of Defendant by email, registered post, and/or personal delivery to his registered address, rather than pursuant to the Hague Convention because of the expected difficulties and delays with the Hague Convention process in Ukraine.  *Id.* ¶¶ 14–15.  He further informs that delivery of the relevant papers to Defendant was successful by email.  *Id.* ¶ 25.  He also affirms that Plaintiffs attempted to serve Defendant in Lviv, Ukraine, at his last-known residence and that delivery of the papers was unsuccessful and the relevant papers were returned to his law firm.  *Id.* ¶ 26.

Mr. Pensyl is also a partner at Allen Overy Shearman Sterling LLP, counsel for Plaintiffs.  Dkt. No. 7-14.  His declaration also demonstrates that Defendant took steps to prevent Plaintiffs from serving him in the English and Ukrainian Proceedings, as a result of which Plaintiffs received permission to serve Defendant and his counsel by email in those proceedings.  *Id.* ¶¶ 9–10.  He affirms that despite significant efforts, including from Ukrainian counsel and a third-party investigative firm, Plaintiffs had been unable to locate an address or place where Defendant resides, works, or frequents or any other method by which Defendant could be served by mail or personal delivery.  *Id.* ¶ 14.

Defendant notes that Plaintiffs never conducted a "skip trace," referenced computer databases other than the Unified State Register, or spoke to any of his associates.  Dkt. No. 6 at 9; Dkt. No. 12 at 5.  Those arguments are unavailing.  Although the unsuccessful use of a skip trace along with the search of computer databases may be sufficient to show impracticability, *see Ferrarese v. Shaw*, 164 F. Supp. 3d 361, 363, 364, 366 (E.D.N.Y. 2016), the use of a skip trace is not necessary.  Courts have found service impracticable under a variety of circumstances.  *See, e.g.*, *Ransome v. Epstein*, 2018 WL 637421, at *1 (S.D.N.Y. Jan. 30, 2018) (finding service

9

impracticable after plaintiff retained an investigatory firm, attempted service at three physical addresses and three email addresses, and sent a copy of the summons to a known lawyer of defendant); *Breuer v. Castaneda*, 2016 WL 11483932, at *2 (S.D.N.Y. Apr. 19, 2016) (finding service impracticable after plaintiff attempted service at three addresses discovered by investigative service and through certified mail); *Born to Build, LLC v. Saleh*, 31 N.Y.S.3d 545, 546–47 (2d Dep't 2016) (affirming alternative service where service through the Hague was prevented because plaintiff had no address for defendant in China); *see also OC Glob. Partners, LLC v. Adaime*, 2022 WL 769328, at *2 (S.D.N.Y. Mar. 14, 2022) (affirming alternative service where defendant's counsel would not accept service nor provide an address for defendant and where no skip trace was conducted).  A showing that traditional service is impracticable "depends upon the facts and circumstances of the particular case," not the completion of any specific investigative method.  *See Windward Bora LLC v. Edinboro*, 2024 WL 872709, at *2 (S.D.N.Y. Mar. 1, 2024) (quoting *Ferrarese*, 164 F. Supp. at 365).

 Plaintiffs did consult the Unified State Register, but Plaintiff has deregistered and he removed his address from that database soon after the Ukrainian Appellate Court referred to it in its order granting recognition and enforcement of the Award in February 2024.  Dkt. No. 7-16 ¶¶ 7–8.  Plaintiff identifies no other databases nor social media platforms to identify an individual in Ukraine that Defendants should have searched.  Plaintiff's attorneys in Ukraine confirmed that he had deregistered from the Unified State Register, *id*. ¶ 7(d), and the Ukrainian court stated that it had been unable to serve Defendant at his place of residence, *id*. ¶ 10.  Defendant does not identify any person who could have given Plaintiffs information about Defendant's address when Defendant himself said he had no address.

10

Defendant also complains that the requirements of § 308(5) were not satisfied because Plaintiffs did not attempt to investigate or serve him at the Bratkovychy Location, did not submit a declaration or name the investigative firm they used or detail the steps that they took to locate Defendant, and did not submit the underlying pleading from the Ukrainian proceeding in which Defendant stated that he had no place of residence.  Dkt. No. 6 at 6; Dkt. No. 12 at 4–5.  There is no requirement that Plaintiffs submit the underlying declaration when counsel familiar with it attested to its contents, nor is there a requirement that Plaintiffs name or identify their investigator.  Defendant states that Plaintiffs "failed to explain the purpose of the declaration under Ukrainian law," Dkt. No. 12 at 4, but he does not ascribe to the declaration any meaning other than that which it plainly has—that Defendant has no residence.  The Bratkovychy Location was discovered through Plaintiffs' investigative efforts.  Counsel obtained Defendant's tax records as an entrepreneur, Dkt. No. 7-16 ¶ 7(f), but the tax records do not include a street name or house number, *id*.  The most recent tax record is dated April 19, 2024, but it was after that date, on May 30, 2024, when Defendant signed a declaration in which he stated that he had no place or residence or place of employment and did not own or rent any real estate that might qualify as a place of residence.  *Id*. ¶ 7(e).  In the face of that evidence, Plaintiffs were not required to send an investigator to walk the streets of a war zone to see if they could find a house that could be identified as the location where Defendant resided.

Defendant relies on a line from *Oglesby v. Barragan*, that, "the movant is required to make competent showings as to actual efforts made to effect service."  24 N.Y.S.3d 770, 772 (3d Dep't 2016); *see* Dkt. No. 12 at 7.  But as already described, courts have been clear that actual prior attempts at service are not required.  Plaintiffs made a sufficient showing of their actual efforts to try to serve Defendant and that service was impracticable because there was no address

11

at which Defendant could be served. That conclusion was amply supported—Defendant declared he had no address, investigation yielded only a single other location where Defendant might be found but no address in that location, attempts by Plaintiffs to locate an address for Defendant were unsuccessful, mail delivered to Defendant's last-known address was returned as undeliverable, and multiple other tribunals found service by traditional methods ineffective and service by email effective as to Defendant. Plaintiffs were not required to make an actual attempt to serve Defendant at a nonexistent address after significant efforts to find a valid address failed. The other cases Defendant cites where alternative service has been rejected are easily distinguishable. Dkt. No. 6 at 10; *see Langdon v. Mohr*, 412 N.Y.S.2d 600, 601–02 (1st Dep't 1979) (service not impracticable where there was no evidence given at all for why direct service was not practicable); *Tetro v. Tizov*, 584 N.Y.S.2d 893 (2d Dep't 1992) (plaintiff had not demonstrated that service was impractical when defendant's attorneys had disclosed defendant's whereabouts to plaintiff and there was no proof that effectuating service by ordinary methods in Belgium would have been unduly burdensome).

II.    **In Rem Jurisdiction**

Defendant next argues that the complaint fails to plead a claim of in rem jurisdiction because Plaintiffs' allegation that Barshchovskiy "beneficially owns assets, including funds, receivables, and shipments of juice concentrate, that are located in and pass through the state of New York" is too vague to support jurisdiction. Dkt. No. 6 at 11–14.

Defendant's argument is not in need of extended response. Defendant relies upon the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure ("Supplemental Rules") and the case law under the Supplemental Rules. *See id.* at 11–12 (citing Supplemental Rules C, E & G; *Peninsula Petroleum Ltd. v. New Econ Line PTE Ltd.*, 2009 WL 702840, at *1 (S.D.N.Y. Mar. 17, 2009)).

Those rules are applicable to claims within the Court's admiralty and maritime jurisdiction. *See* Supplemental Rules A; Fed. R. Civ. P. 9(h). Defendant also relies on case law regarding the in rem jurisdiction of the courts to order the civil forfeiture of funds that were involved in or were the proceeds of illegal activity. *See United States v. $490,920 in U.S. Currency*, 911 F. Supp. 720, 725 (S.D.N.Y.), *on reconsideration in part*, 937 F. Supp. 249 (S.D.N.Y. 1996).

This case is neither an admiralty action nor a civil forfeiture action where the Court exercises in rem jurisdiction.[3] It is an Article 53 action for enforcement and recognition of a foreign money judgment. It is therefore not governed by the rules applicable to pleading admiralty cases. And a New York court asked to recognize and enforce a foreign money judgment need not have in personam jurisdiction over the judgment debtor. *See Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 289 (4th Dep't 2001).

## CONCLUSION

The motion to dismiss is DENIED.

The Clerk of Court is respectfully directed to close Dkt. No. 5.

SO ORDERED.

Dated: September 19, 2024
       New York, New York

_____
LEWIS J. LIMAN
United States District Judge

---

[3] The other cases cited by Defendant are similarly inapposite. *Harvardsky Prumyslovy Holding, A.S.-V Likvidaci v. Kozeny*, 983 N.Y.S.2d 240 (2014), involved an Article 53 action to recognize and enforce a foreign money judgment but the opinion Defendant cites did not address the jurisdictional question at all. It addressed whether a restitution award granted by a criminal court is a foreign judgment entitled to recognition and enforcement under Article 53 of the CPLR. *Id.* at 242. Similarly, *AlbaniaBEG ambient Sh.p.k. v. Enel S.p.A.*, 73 N.Y.S.3d 1 (1st Dep't 2018) involved a plaintiff who did not identify any property that the defendant might have owned in New York and a defendant arguing that the foreign country judgment did not satisfy the basic perquisites for recognition set forth in Article 53, such as being for a sum of money.

13