```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
CARGILL FINANCIAL SERVICES                     :
INTERNATIONAL, INC., et al.,                   :
                                               :
                        Plaintiffs,            :
                                               :       24-cv-5751 (LJL)
           -v-                                 :
                                               :       OPINION AND ORDER
TARAS BARSHCHOVSKIY,                           :
                                               :
                        Defendant.             :
---------------------------------------------------------------------X
```

LEWIS J. LIMAN, United States District Judge:

Plaintiffs Cargill Financial Services International, Inc. ("CFSI") and CFSIT, Inc. ("CFSIT" and, together with CFSI, "Cargill" or "Plaintiffs") move for summary judgment pursuant to Federal Rule of Civil Procedure 56 and New York Civil Practice Law and Rules ("CPLR") §§ 3213 and 5303. Dkt. No. 26. Plaintiffs seek entry of a judgment recognizing the judgment rendered by the High Court of Justice, Business and Property Courts of England & Wales, Commercial Court on January 29, 2024, and directing the Clerk of Court to enter judgment in favor of Cargill and against Defendant Taras Barshchovskiy ("Barshchovskiy" or "Defendant") in the amount of $123,940,459.55. *Id.*

For the following reasons, the motion for summary judgment is granted.

## BACKGROUND

This is an action under Article 53 of the CPLR for recognition of a final and conclusive foreign country money judgment. Dkt. No. 3–1 ¶ 1. The following facts are undisputed.

On January 18, 2021, Cargill commenced twenty-seven arbitration proceedings against Defendant governed by the London Court of International Arbitration ("LCIA") Rules (2020) ("LCIA Rules"). Dkt. No. 7–3 ¶ 31. Cargill pursued claims for non-payment of debts under

twenty-seven individual agreements, each of which provided for arbitration under the LCIA Rules. *Id.*

On April 12, 2021, the LCIA consolidated the twenty-seven arbitrations into two arbitrations. *Id.* ¶ 32. On May 27, 2021, the LCIA appointed three experienced English law commercial barristers to serve as a tribunal (the "Tribunal"). *Id.* ¶ 28. On June 25, 2021, the Tribunal further consolidated the two arbitrations into a single arbitration. *Id.* ¶ 35.

On August 19, 2022, Defendant wrote to the Tribunal, claiming that he had not been given a reasonable opportunity to file written submissions and evidence related to an upcoming merits hearing and that it had become clear to him that the Tribunal did not intend to permit him to properly defend the claim against him. *Id.* ¶ 144. He informed the Tribunal that he would not participate in the proceedings and reserved all of his rights. *Id.* Notwithstanding Defendant's non-participation, the Tribunal indicated that it would not proceed on a default or summary basis and that Plaintiffs would be expected to prove their case, address points previously raised by Defendant, and answer questions raised by the Tribunal. *Id.* ¶ 149. On September 26, 2022, the Tribunal conducted the merits hearing. *Id.* ¶ 155.

On December 14, 2022, the LCIA issued an arbitration award for Cargill and against Barshchovskiy (the "Award"). Dkt. No. 29 ¶ 1; Dkt. No. 7–3. The Award granted Cargill damages in the amount of $123,940,459.55, exclusive of interest accruing based on debt owed to Cargill by Defendant pursuant to various financing documents. Dkt. No. 29 ¶ 2; Dkt. No. 7–3. The Tribunal considered, and dismissed, each of Defendant's defenses to Cargill's claims. Dkt. No. 7–3 ¶¶ 549–801. In sum, Defendant argued that (1) the Tribunal did not have jurisdiction over Defendant as he could not be subject to an arbitration agreement under the applicable Ukrainian law; (2) Cargill made various misrepresentations to Defendant, including fraudulent

2

and/or negligent misrepresentations, which void the financing agreements; and (3) that the relevant financing agreements were void for lack of consideration.  *Id.*  The Tribunal reasoned that Defendant's defenses were "almost entirely lacking in details" and had "significant shortcomings."  *Id.* ¶¶ 640, 643.

Subsequently, Defendant challenged the Award under Section 68 of the Arbitration Act. Dkt. No. 27 ¶ 55.  Section 68 permits a party to challenge an award to the English Commercial Court on the basis of a "serious irregularity" affecting the Tribunal, the proceedings, or the award.  *Id.* ¶ 54.  Defendant argued that the Tribunal did not act fairly and impartially in its conduct of the Arbitration, and that he was thus denied a reasonable opportunity to present his case.  *Id.*  Defendant further argued that the Tribunal did not properly conduct its proceedings pursuant to Article 14.1 of the LCIA Rules, which the parties had adopted in their agreements. *Id.* ¶ 56.  On May 25, 2023, the English Commercial Court dismissed Defendant's Section 68 claim.  Dkt. No. 7–12.  The English Commercial Court provided the following reasons for dismissal: (1) "[t]he arbitral tribunal plainly considered the several case management matters during 2022 and consequent upon the invasion carefully and impartially[;]" (2) "[t]he arbitral tribunal was fully entitled to reconsider its 8 April 2022 ruling on 15 April 2022[;]" (3) "[a]t all points [Defendant] had the opportunity to put his circumstances to the arbitral tribunal; at no point was there arguable unfairness in their consideration and decision[;]" (4) "[e]ven from July 2022, [Defendant] did not take all the steps available to him to be ready for September 2022 or before the Partial Final Award was made in December 2022[;]" and (5) "[t]he claim has no real prospect of success."  *Id.* at 3.

On November 22, 2023, following Defendant's exhaustion of all available means by which he could challenge the award, Cargill applied to the High Court of Justice, Business and

3

Property Courts of England & Wales, Commercial Court (KBD) (the "English Court") for enforcement of the Award.  Dkt. No. 29 ¶ 1.  By Order dated January 29, 2024, the English Court granted Cargill's application to enforce the Award and issued a judgment confirming the terms of the Award (the "English Judgment").  *Id.* ¶ 3; Dkt. No. 7–2.  On January 30, 2024, Cargill's counsel served Defendant with the English Judgment and certain other required papers by email, including upon Defendant's counsel, in accordance with a service order entered by the English Court.  Dkt. No. 29 ¶ 4; Dkt. No. 27 ¶ 85.  Under English law, Defendant had twenty-one days to object to the enforcement order.  Dkt. No. 29 ¶ 5.  Defendant did not object to the enforcement order.  *Id.* ¶ 6.  Accordingly, the English Judgment became final, conclusive, and enforceable against Defendant under English law on February 20, 2024.  *Id.* ¶ 7.  It remains unsatisfied in its entirety.  *Id.* ¶ 9.

## PROCEDURAL HISTORY

Plaintiffs filed this action on March 28, 2024, in the Supreme Court of the State of New York, County of New York.  Dkt. No. 1–1.  On June 20, 2024, New York State Supreme Court Justice Arthur F. Engoron signed an order authorizing alternative service of process on Defendant and extending the time to serve the summons and complaint on Defendant (the "Order of Service").  Dkt. No. 3–2.  The Order of Service permitted Plaintiffs to effect service upon Defendant by email and Facebook, pursuant to CPLR § 308(5).  *Id.*  On July 16, 2024, counsel for Plaintiffs filed an affirmation of service, attesting that Defendant had been served by email consistent with the Order of Service.  Dkt. No. 3–3.

On July 30, 2024, Defendant removed the case to the United States District Court for the Southern District of New York on the basis of diversity jurisdiction.  Dkt. No. 3.

On August 5, 2024, Defendant filed a motion to dismiss the complaint pursuant to Rule 12(b)(5) and (b)(6) for insufficient service of process and failure to state a claim for relief.

4

Dkt. No. 5. On September 20, 2024, the Court issued a Memorandum and Order denying the motion in its entirety. Dkt. No. 15; *Cargill Fin. Servs. Int'l, Inc. v. Barshchovskiy*, 2024 WL 4240998 (S.D.N.Y. Sept. 19, 2024).

Defendant filed an answer on October 3, 2024. Dkt. No. 18.

Plaintiffs filed this motion for summary judgment on November 22, 2024. Dkt. No. 26. Plaintiffs also filed a declaration of counsel, a Local Rule 56.1 statement, and a memorandum of law in support of the motion. Dkt. Nos. 27–29. Defendant filed a memorandum of law in opposition to the motion on December 20, 2024. Dkt. No. 30. Defendant did not file a response to Plaintiff's Local Rule 56.1 statement. Plaintiffs filed a reply memorandum in further support of the motion on January 10, 2025. Dkt. No. 31.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009). The party seeking summary judgment bears the burden of demonstrating that "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a).

If the movant meets its burden, "the nonmoving party must come forward with admissible evidence to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeusert Co.*, 537 F.3d 140, 145 (2d Cir. 2008). "Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically

5

denied and controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party." Local Civil Rule 56.1(c); *see T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 418 (2d Cir. 2009) ("A nonmoving party's failure to respond to a Rule 56.1 statement permits the court to conclude that the facts asserted in the statement are uncontested and admissible.").

## DISCUSSION

Plaintiffs seek recognition of the English Judgment pursuant to CPLR § 5303. Dkt. No. 26.[1] Defendant does not dispute any of the facts set forth in Plaintiffs' Rule 56.1 statement and thus is deemed to have accepted them. *See T.Y.*, 584 F.3d at 418. Instead, Defendant resists the motion for summary judgment on the sole ground that the Court does not have personal jurisdiction over him and the exercise of personal jurisdiction would violate the Due Process Clause of the United States Constitution. Dkt. No. 30 at 1. Defendant argues that, having asserted his defenses to recognition of the English Judgment in his Answer," he cannot be required to "prove up those defenses . . . in a forum where he maintains no property and has no contacts that would subject him to personal jurisdiction." *Id.*

**I.    Article 53**

The recognition of a foreign judgment by the courts of New York is governed by Article 53 of the CPLR. *Williams v. Fed. Gov't of Nigeria*, 2024 WL 3759649, at *19 (S.D.N.Y. Aug. 12, 2024). Article 53 provides a "streamlined" mechanism for recognition of a foreign

---

[1] Although Plaintiffs' motion for summary judgment states that it seeks "recognition and enforcement" of the judgment, Plaintiffs invoke only Article 53 of the CPLR—which controls recognition of foreign country money judgments—and not Article 52 of the CPLR—which controls enforcement of domestic and domesticated money judgments. *Id.*; *see also* Dkt. No. 28 at 1 (Plaintiffs describe the suit as "a ministerial action to recognize a final and conclusive English court money judgment"). The Court accordingly construes Plaintiffs' motion for summary judgment as seeking only recognition.

6

money judgment. *See CIBC Mellon Tr. Co. v. Mora Hotel Corp. N.V.*, 792 N.E.2d 155, 155 (N.Y. 2003). The Article is applicable to a foreign country judgment to the extent that the judgment grants or denies recovery of a sum of money and is final, conclusive, and enforceable under the law of the foreign country where it is rendered. CPLR § 5302. "In proceeding under article 53, the judgment creditor does not seek any new relief against the judgment debtor, but instead merely asks the court to perform its ministerial function of recognizing the foreign country money judgment and converting it into a New York judgment." *See Lenchyshyn v. Pelko Elec., Inc.*, 723 N.Y.S.2d 285, 291 (1st Dep't 2001); *accord John Galliano, S.A. v. Stallion, Inc.*, 930 N.E.2d 756, 758–59 (N.Y. 2010).

The CPLR thus carefully distinguishes between *recognition* of a foreign country judgment and *enforcement* of such judgment.[2] The effect of recognition pursuant to Article 53 is to make the foreign country money judgment "(1) conclusive between the parties to the same extent as the judgment of a sister state entitled to full faith and credit in this state would be conclusive; and (2) enforceable in the same manner and to the same extent as a judgment rendered in this state." CPLR § 5307(a). Absent recognition then, a foreign country money

---

[2] Legislatures and courts have not always drawn such clear distinction. *See* Jerome A. Hoffman, *Recognition by Courts in the Eleventh Circuit of Judgments Rendered by Courts of Other Countries*, 29 Cumb. L. Rev. 65, 66, 60 (1999) (stating that "[t]hose who work in the language of law—judges, lawyers, legislators, even scholars—have not always drawn the line carefully between 'recognition' and 'enforcement,'" and noting that the Uniform Enforcement of Foreign Judgments Act of 1964, "notwithstanding its misleading name," governs recognition, not enforcement, of foreign money judgments). Prior to its amendment in 2021, Section 5303(a) of Article 53 included a sentence that read, "a foreign judgment is *enforceable* by an action on the judgment, a motion for summary judgment in lieu of complaint, or in a pending action by counterclaim, cross-claim or affirmative defense." CPLR § 5303(a) (emphasis added). The New York legislature amended the statute in 2021 to clarify the issue, and the new provisions make clear that (1) the sole function of Article 53 is judgment recognition, and (2) recognition of a foreign country money judgment is a precondition for its enforcement. *See* CPLR § 5303(b)–(c) (replacing the word "enforceable" with the word "recognition").

judgment is but "a meaningless piece of paper, enforceable only within the borders of the jurisdiction of the court that rendered it." *Williams*, 2024 WL 3759649, at *21; *see also V'Soske, Inc. v. Vsoske.com*, 2003 WL 1747144, at *7 (S.D.N.Y. Apr. 1, 2003) ("No law has any effect . . . beyond the limits of the sovereignty from which its authority is derived." (quoting *Hilton v. Guyot*, 159 U.S. 113, 163–64) (1895)). Recognition "elevates a recognized foreign judgment to the status of a domestic judgment." Robert L. Haig, Business and Commercial Litigation in Federal Courts § 71:36 (2024). Once foreign judgments are recognized in U.S. courts, the "foreign judgments are entitled to enforcement in the same manner as any other domestic judgment." *Id.*; *see also* Restatement (Second) of Conflict of Laws 5 2 intro. note, 5 3 intro. note (1971) ("Recognition of a judgment is a condition precedent to its enforcement."); Restatement (Third) of the Foreign Relations Law of the United States § 481, cmt. b (1987) ("The judgment of a foreign state may not be enforced unless it is entitled to recognition.").

In keeping with its limited function, Article 53 provides only limited exceptions to the recognition of foreign country money judgments. Section 5304 lays out several exceptions to the presumption of applicability, three of which mandate nonrecognition and nine of which are grounds for discretionary nonrecognition. *Williams*, 2024 WL 3759649, at *19 (citing CPLR § 5304). "The mandatory grounds for nonrecognition include that 'the judgment was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of law;' that 'the foreign court did not have personal jurisdiction over the defendant;' and that 'the foreign court did not have jurisdiction over the subject matter.'" *Id.* (quoting CPLR § 5304(a)). A court may, but is not required to, withhold recognition if:

> (1) the defendant in the proceeding in in the foreign court did not receive notice of the proceeding in sufficient time to enable the defendant to defend;

8

(2) the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case;

(3) the judgment or the cause of action on which the judgment is based is repugnant to the public policy of this state or of the United States;

(4) the judgment conflicts with another final and conclusive judgment;

(5) the proceeding in the foreign court was contrary to an agreement between the parties under which the dispute in question was to be determined otherwise than by a proceeding in that court;

(6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action;

(7) the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering courts with respect to the judgment;

(8) the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law; or

(9) the cause of action resulted in a defamation judgment obtained in a jurisdiction outside the United States, unless the court before which the matter is brought sitting in this state first determines that the defamation law applied in the foreign court's adjudication provided at least as much protection for freedom of speech and press in that case as would be provided by both the United States and New York constitutions.

CPLR § 5304(b).

## II. The English Judgment Is Entitled To Recognition Under the CPLR

There is no dispute of fact that the English Judgment is a foreign country money judgment and that it is final, conclusive, and enforceable. Article 53 thus governs its recognition. *See* CPLR § 5302; *Williams*, 2024 WL 3759649, at *23.

As a general matter, Article 53 does not require that a New York court faced with a request to recognize a foreign money judgment establish personal jurisdiction over the judgment debtor. *See* Robert L. Haig, 2 Commercial Litigation in New York State Courts § 2:34, n.7 (5th ed.). Rather, the Article requires that the foreign court that rendered the money judgment have had personal jurisdiction over the debtor. *See Abu Dhabi Com. Bank PJSC v. Saad Trading,*

9

*Contracting & Fin. Servs. Co.*, 986 N.Y.S.2d 454, 458 (1st Dep't 2014) ("Although CPLR 5304(a) provides that the trial court may refuse recognition of the foreign country judgment if the foreign country court did not have personal jurisdiction over the judgment debtor, it does not provide for non-recognition on the ground that the New York court lacks personal jurisdiction over the judgment debtor in a CPLR article 53 proceeding."); *see also John Galliano*, 930 N.E.2d at 759 ("[T]he inquiry turns on whether exercise of jurisdiction by the foreign court comports with New York's concept of personal jurisdiction." (quoting *Sung Hwan Co., Ltd. v. Rite Aid Corp.*, 850 N.E.2d 647, 651 (N.Y. 2006))).

Defendant invokes the First Department's decision in *AlbaniaBEG* to support his argument that, notwithstanding that general rule, the Court is required to establish personal jurisdiction in this case. Dkt. No. 30 at 1; *AlbaniaBEG Ambient Sh.p.k. v. Enel S.p.A.*, 73 N.Y.S.3d 1 (1st Dep't 2018). In *AlbaniaBEG*, the judgment debtors resisted recognition of an Albanian money judgment on the grounds the court lacked personal jurisdiction; they argued that (1) they were "foreign corporations with no known presence in the state of New York," (2) the creditor had not "identified any property of defendants within the jurisdiction," and (3) the creditor had not "alleged any contacts between the defendants and New York that bear the slightest relation to the dispute underlying the Albanian judgment." 73 N.Y.S.3d at 3 (quotation marks and alterations omitted). In addition to those jurisdictional arguments, the debtors "noted that, if their motion to dismiss on jurisdictional grounds [was] denied, they intended to oppose the summary judgment motion based on the existence of 'numerous grounds for non-recognition of the Albanian judgment' under article 53." *Id.* Specifically, they argued that the Albanian judgment could not be recognized because it was rendered under a system which did not provide impartial tribunals or procedures compatible with the requirements of due process of law, was

10

contrary to an agreement between the parties under which the dispute was to be settled otherwise than by proceedings in that court, conflicted with another and final conclusive judgment, and was repugnant to the public policy of New York. *See id.* at 3–6 (the debtors claimed that: (1) "the Albanian judgment conflicts with a prior final and conclusive judgment by the Italian courts," (2) "the proceeding in the Albanian court was contrary to an agreement between the parties to adjudicate their disputes by arbitration in Italy," (3) "Albania does not provide impartial tribunals or procedures compatible with due process," and (4) "the Albanian judgment, which sets forth a formula to determine most of the amount to be recovered, is not for the recovery of a sum of money, rendering it not conclusive." (quotation marks and alterations omitted)). In support of the first ground for mandatory non-enforcement, defendants adduced reports by the United States Departments of State and Commerce noting that corruption and susceptibility to political pressure were serious problems in the Albanian judicial system. *Id.* at 7, 12 n. 20. "The objection that the Albanian judgment 'conflicts with another final and conclusive judgment [wa]s supported, on its face, by the Italian judgment upholding the arbitration award dismissing [debtor's corporate parent's] claim." *Id.* at 12 n.20 (quoting CPLR § 5304(b)(5)). "Similarly, the arbitration clause of the BEG–Enelpower agreement appears, on its face, to support defendants' objection that the Albanian proceeding 'was contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court.'" *Id.* (quoting CPLR § 5304(b)(6)). The First Department also detailed the Defendant's argument that because the Albanian judgment sets forth a formula for calculating damages that includes a variable—the price of energy—to be resolved through expert evidence and future litigation, the judgment did not grant recovery of a sum of money. *See id.* at 7–8. The

11

First Department noted that in light of the debtor's arguments and evidentiary showing, debtors' objections to the Albanian judgment were "colorable" and "nonfrivolous." *Id.* at 1, 12 n. 20.

The First Department held that personal jurisdiction was required in that case; where the defendant had "placed in question" the foreign judgment's entitlement to recognition and had presented "contested questions of fact, of law, or both," it would offend due process to require the defendant "to litigate such substantive issues in a forum where it maintains no property, and where it has no contacts that would otherwise subject it to personal jurisdiction." *Id.* at 10–11. Where "the foreign judgment's entitlement to recognition under article 53 is placed in question[,] . . . there is something to defend, and the court's function ceases to be merely ministerial." *Id.*

The First Department's holding in *AlbaniaBEG* stands in contrast to its later holding in *Akhmedova v. Akhmedov*, 139 N.Y.S.3d 33 (1st Dep't 2020). Relying on *AlbaniaBEG*, the defendant in *Akhmedova* argued that the plaintiff's action for recognition of a foreign money judgment should be dismissed for lack of personal jurisdiction. *Id.* at 35. The defendant asserted three affirmative defenses: (1) the English court that issued the judgment was not impartial; (2) the judgment was repugnant to the public policy of this state, and (3) the judgment conflicted with another final and conclusive judgment. *See id.* at 35–36; *see* CPLR § 5304(a)(1), (b)(4)–(5). The *Akhmedova* court distinguished *AlbaniaBEG* and held that the plaintiff need not have established personal jurisdiction over the defendant in New York. The first two asserted defenses were "meritless" on their face. The first defense was facially deficient because CPLR § 5304(a)(1) speaks to whether the judgment was rendered pursuant to "a *system* which does not provide impartial tribunals or procedures compatible with the requirements of due process" and, as a matter of law, not to "the legal processes employed in a particular litigation." *Id.* at 35–36

12

(first quoting CPLR § 5304(a)(1), then quoting *Harvardsky Prumyslovy Holding, A.S.-V Likvidaci v. Kozeny*, 90 N.Y.S.3d 10, 12 (1st Dept. 2018)).  The second defense was facially deficient because, as a matter of law, "[n]either the cause of action before the English court—a matrimonial proceeding to distribute marital property—nor that court's ruling permitting plaintiff to call defendant's attorney to testify as to allegedly hidden assets (based on exceptions to attorney-client privilege also recognized in New York law) was 'repugnant to the public policy of this state.'"  *Id.* at 36 (quoting CPLR § 5304(b)(4)).  In effect, there was nothing substantive to litigate.

The third defense did not require personal jurisdiction because, on the record presented by the defendant, it was "wholly lacking in evidentiary support." *Id.* at 35.  It is a defense to judgment recognition that the judgment sought to be recognized conflicts with another final and conclusive judgment.  But the court held that the assertion of such defense was not sufficient to "'place[] in question' the English judgment's entitlement to recognition" and thus to require personal jurisdiction, *id.* at 36 (quoting *AlbaniaBEG*, 73 N.Y.S.2d at 13), because the "defendant failed to submit any admissible evidence to substantiate" that defense, *id.*  Even though the defendant submitted an affidavit in support of the defense, such affidavit was merely an "unsworn assertion" and not admissible in evidence. *Id.*

Defendant's affirmative defenses here closely resemble the defenses that were either "meritless on their face" or "wholly lacking in evidentiary support" in *Akhmedova*.  Defendant cites to paragraphs 80 through 84 of his answer for the defenses that he claims have put the English judgment's entitlement to recognition in question.  Dkt. No. 30 at 2 (citing Dkt. No. 18 ¶¶ 80–84).  Four of those five paragraphs, however, refer to alleged defects in the underlying arbitration proceedings: (1) "[t]he assignment agreements and personal guarantees between Mr.

13

Barshchovskiy and Plaintiffs were fraudulent transactions designed to circumvent Ukrainian banking regulations," Dkt. No. 18 ¶ 81; (2) "[t]he invalidity of these transactions was not properly considered by the LCIA Tribunal," *id.* ¶ 82; (3) "Plaintiffs' factual position in the arbitration lacked sufficient evidentiary support, and the evidence presented ignored key episodes revealing Plaintiffs' position as fraudulent," *id.* ¶ 83; and (4) "[Defendant] was not given an opportunity to cross-examine Plaintiffs' witnesses during the arbitration proceeding," *id.* ¶ 84.  Those allegations, however, confuse the award which was the subject of the English enforcement proceedings with the judgment rendered by the English court which is the subject of these proceedings.  If Defendant had an issue with respect to the evidence before or the procedures followed by the arbitrators, the proper forum to raise those arguments would have been in the English court tasked with confirming the Award.  *See Mont Blanc Trading Ltd. v. Khan*, 2014 WL 1116733, at *1 (S.D.N.Y. Mar. 20, 2014) (Nathan, J.) ("When a foreign court confirms an arbitration award and the winning party petitions to have that judgment enforced in the United States, the resulting action involves the enforcement of the foreign court's judgment, not the enforcement of the underlying arbitration award." (citing *Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713 n.2 (2d Cir. 1987))); *accord Ocean Warehousing B.V. v. Baron Metals & Alloys, Inc.*, 157 F. Supp. 2d 245, 249–52 (S.D.N.Y. 2001).  None of those issues provides grounds for non-recognition under Article 53 of the CPLR.  Even if one were to assume the truth of the allegations, they would not deprive Plaintiffs of their right to have the judgment recognized.  The defenses are meritless on their face; there is nothing to litigate.

The remaining allegation is so general as to be meaningless and is wholly lacking in evidentiary support.  Defendant asserts that "[t]his action should be dismissed because the English Judgment was obtained via intrinsic or extrinsic fraud." Dkt. No. 18 ¶ 80.  The

allegation corresponds to a discretionary ground for non-recognition. *See* CPLR § 5304(b)(2) ("the judgment was obtained by fraud that deprived the losing party of an adequate opportunity to present its case"); *see also id.* § 5304(b)(7) ("the judgment was rendered in circumstances that raise substantial doubt about the integrity of the rendering courts with respect to the judgment"); *id.* § 5304(b)(8) ("the specific proceeding in the foreign court leading to the judgment was not compatible with the requirements of due process of law"). That is all that can be said for it. Defendant alleges no facts and, more importantly, offers no admissible evidence, to support the conclusion that the English judgment was obtained by fraud.

Indeed, it is undisputed that Defendant was provided notice of the English proceeding through email in accordance with the English Court's service order and that he was afforded twenty-one days to object to the enforcement order. Dkt. No. 29 ¶¶ 4–5; Dkt. No. 7-2.

Therefore, like the defendant in *Akhmedova*, Defendant has failed to "place[ ] in question" the English judgment's entitlement to recognition. *Akhmedova*, 139 N.Y.S.3d at 36 (quoting *AlbaniaBEG*, 73 N.Y.S.3d at 13). Absent a colorable defense, the Court's role is "merely ministerial" as the Court need not "determine contested questions of fact, of law, or of both," nor need it exercise judicial discretion. *AlbaniaBEG*, 73 N.Y.S.3d at 13. Defendant "bears no hardship, since there is nothing to defend." *Abu Dhabi*, 986 N.Y.S.2d at 459. "There are no witnesses to be inconvenienced or necessary evidence beyond the court's jurisdiction." *Id.*

## III.    Recognition Does Not Violate Due Process

Defendant maintains that enforcement of a foreign money judgment against him would violate the Due Process Clause of the U.S. Constitution. Dkt. 30 at 5. This argument is based on a mistaken understanding of Article 53.

As stated, Article 53 governs the recognition, not the enforcement, of a foreign money judgment. Its effect is simply to permit a foreign money judgment to be treated the same and no better or worse than the judgment of a sister state and to make the judgment "enforceable in the same manner and to the same extent as a judgment" rendered in New York. CPLR § 5307. In short, it is "ministerial." *Lenchyshyn*, 723 N.Y.S.2d at 291. If the judgment creditor wants the judgment to have force, it will have to resort to the mechanisms of Articles 51 and 52 of the CPLR. To do so, the judgment creditor will have to establish personal jurisdiction. The judgment creditor may be able to serve a subpoena under CPLR § 5224, but the only subpoena that will have force of law will be a subpoena served on a person or entity over whom the court has personal jurisdiction. *See Townsend Farms, Inc. v. Goknur Gida Maddeleri Enerji Imalate Ithalat Ihracat Ticaret*, 2020 WL 7260513, at *2 (S.D.N.Y. Dec. 9, 2020) (citing *Estate of Ungar v. Palestinian Auth.*, 400 F. Supp. 2d 541, 547 (S.D.N.Y. 2005), *aff'd*, 332 F. App'x 643 (2d Cir. 2009)). The judgment creditor may be able to obtain a restraining notice, but that restraining notice will not have effect if the court has no personal jurisdiction over the party who has been served. *Id.* The judgment creditor may be able to execute on real property or on personal property, but it will be able to do so only if the real property is located in New York or the judgment debtor can be found in New York sufficient to ground personal jurisdiction. *See Energy Transp., Ltd. v. M.V. SAN SEBASTIAN*, 2003 WL 21415267, at *2 (S.D.N.Y. June 19, 2003) (noting that a party cannot be a proper garnishee unless it is subject to the court's jurisdiction); *see also Spin Master Ltd. v. 158*, 463 F. Supp. 3d 348, 384 (S.D.N.Y. 2020) (noting that CPLR § 5225 "authorizes the commencement of a special proceeding or motion practice against the person in possession of [certain] property that may ultimately result in the transfer of the property *after finding personal jurisdiction over the garnishee*" (emphasis added)), *adhered*

*to in part on reconsideration*, 2020 WL 5350541 (S.D.N.Y. Sept. 4, 2020); *see also Tire Eng'g & Distribution L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir. 2014) ("[P]ersonal jurisdiction is the linchpin of authority under section 5225(b)" (quoting *Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Com.*, 990 N.E.2d 114, 120 (N.Y. 2013)), *subsequent history omitted*; Restatement (Second) of Judgments § 8 (1982).

It thus follows that it is no offense to due process that the court recognize a foreign judgment absent personal jurisdiction. *See Abu Dhabi*, 986 N.Y.S.2d at 459 ("[S]ince CPLR article 53 and the English court are already protecting the defendant's due process rights, including personal jurisdiction, the court charged with recognition and enforcement [is] not required to grant further protection during a ministerial enforcement action."). A court must have personal jurisdiction in order to exercise jurisdiction over a person, to determine interests in a thing or in property, or to establish or terminate a status. *See* Restatement (Second) of Judgments §§ 5–6, 8. However, the effect of recognition is not to give the court the power over a person or to determine interests in a thing or to determine a status. It is a preliminary step necessary before the court takes any of those steps in connection with a foreign judgment.

Courts have held that a plaintiff need not demonstrate personal jurisdiction in order to obtain a default judgment. *See, e.g.*, *Everything Yogurt Brands, LLC v. Bianco*, 2024 WL 3497757 (S.D.N.Y. July 22, 2024) (collecting cases holding that a court need not have personal jurisdiction to enter default judgment). The effect is simply to reduce an undisputed claim to a judgment enforceable at law. The default judgment does not itself give a court any authority to exercise power over person or property. The effect of judgment recognition is no different. It does no more and no less than convert the piece of paper issued by a foreign court with no authority in this jurisdiction into a document with force of law. But if the judgment debtor has

17

no property in New York or cannot be found in New York, the recognized judgment will still amount to little more than a piece of paper. The court will not be able to exercise jurisdiction over the debtor or the debtor's property. And, if the New York court lacks jurisdiction, the recognized judgment will have no effect anywhere other than in New York. A sister-state is not required to give full faith and credit to a judgment entered by a court that does not require personal jurisdiction for its exercise of power. *See Ahmad Hamad Al Gosaibi & Bros. Co. v. Standard Chartered Bank*, 98 A.3d 998, 1006 (D.C. Ct. App. 2014) (holding that New York judgment recognizing a Bahraini judgment was not entitled to recognition in Washington D.C. because "when a state does nothing more than recognize a foreign country judgment, it lacks the type of interest that drives full faith and credit jurisprudence"); Restatement (Third) of Foreign Relations Law IV 8 intro. note ("[N]o state recognizes or enforces the judgment of another state rendered without jurisdiction over the judgment debtor.").

    Indeed, the opposite rule would only invite a game of judgment enforcement whack-a-mole. Defendant advocates for a rule under which the judgment creditor could obtain recognition in a jurisdiction only if the judgment creditor was able to find assets of the foreign judgment debtor in that jurisdiction.[3] But it is one of the primary purposes of judgment recognition to give the judgment creditor the right to use the tools of the court to locate the judgment creditor's assets. And judgment enforcement is not possible until after a court grants judgment recognition. Thus, if it were the case that the judgment creditor could only obtain

---

[3] Courts disfavor discovery into assets before judgment is entered. *See Vincent v. Money Store*, 2012 WL 6622707, at *1 (S.D.N.Y. Dec. 20, 2012) (describing pre-judgment discovery of assets as an "extraordinary remedy"). By contrast, "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 139 (2014); *see* CPLR § 5223 (providing that "a judgment creditor may compel disclosure of all matters relevant to the satisfaction of the judgment").

18

recognition and use those tools if the creditor was able to locate assets, the clever judgment debtor could perpetually evade judgment enforcement.  *See Lenchyshyn*, 723 N.Y.S.2d at 292.  All the judgment debtor would have to do would be to wait until the judgment creditor identified assets sufficient to permit the judgment recognition action and then—before the court was able to act—move the assets elsewhere.  The result would be to require the creditor to go on a never-ending hunt to satisfy the foreign judgment.  A debtor who was resourceful enough would never have to satisfy the Court's judgment, and the judgment would forever remain a piece of paper that, as a practical matter, would convey no benefit.

## CONCLUSION

The motion for summary judgment is granted.

The Clerk of Court is respectfully directed to close Dkt. No. 26.

SO ORDERED.

Dated: February 18, 2025
New York, New York

_____
LEWIS J. LIMAN
United States District Judge